# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| **CHARLES SPURLIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | 7:19-cv-01595-LSC |
| | ) | |
| **THE CINCINNATI INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OF OPINION

Plaintiff Charles Spurlin ("Spurlin"), a resident of Tuscaloosa County, Alabama, filed this action against Defendant The Cincinnati Insurance Company ("Cincinnati Insurance") in the Circuit Court of Tuscaloosa, County, Alabama. Spurlin seeks both compensatory and punitive damages from Cincinnati Insurance for breach of contract and bad faith refusal to indemnify and defend Spurlin under Alabama law. Spurlin did not seek a specific amount of damages in his complaint.

Cincinnati Insurance removed the action to this Court on September 27, 2019, averring federal jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). (Doc. 1.) Spurlin filed a Motion to Dismiss and Remand, contending that Cincinnati

Insurance had failed to meet its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interests and costs. (Doc. 5.) The issues raised in Spurlin's motion have been briefed by the parties and are ripe for review. Upon full consideration and for the reasons set forth below, this Court finds that Spurlin's motion (doc. 5) is due to be granted.

I. **Background**[1]

The root of this action lies in a lease dispute regarding property at 605 Greensboro Avenue, Tuscaloosa, Alabama 35401 ("Alston Building"). (Doc. 1 Ex. A.) The Alston Building is a condominium, with seven floors separately owned by various individuals and entities. (Doc. 7 Ex. B at 75–77.) An entity known as the Alston Place Owners Association, Inc. ("Owners Association") manages, operates, and administers the Alston Building on behalf of the individual owners. (Doc. 1 Ex. A.)

Spurlin holds the lease for a covered parking lot adjacent to the Alston Building. (Doc. 7 Ex. A at 1.) In 1985, he and his predecessors in interest leased this premises to the Owners Association and its predecessors in interest for a term of

---

[1] The following facts are taken from Cincinnati Insurance's Notice of Removal, as well as the parties' briefs and exhibits submitted in support and in opposition to this Motion. The Court makes no ruling on the veracity of these facts.

ninety-nine years for $1.00 per year. (Doc. 1 Ex. A.) As part of this lease, the Owners Association had an obligation to maintain an insurance policy on the property that listed Spurlin as a named insured party. (*Id.*) After discovering a gap in the insurance coverage, Spurlin terminated the lease based on the Owners Association's apparent breach. (*Id.*) However, the Owners Association asserts that no breach occurred and that a mistake by the insurance company merely created the appearance of a gap in coverage. (*Id.*)

The Owners Association thereafter brought an action against Spurlin, seeking declaratory relief and asserting claims against Spurlin for breach of contract, wrongful termination of the lease, and wrongful eviction ("underlying action"). (*Id.*)[2] The Owners Association's complaint did not state a specific amount of damages. (*See id.*) Citing the policy under which he was a named insured party, Spurlin filed a claim with Cincinnati Insurance to defend and indemnify him in the underlying action. (Doc. 1 Ex. B.) However, Cincinnati Insurance denied Spurlin's claim. (*Id.*) The instant action by Spurlin resulted.

---

[2] The Owners Association's action is styled as *Alston Place Owners Association, Inc. v. Charles Spurlin*, Case No. CV-2019-900522, and remains pending in the Circuit Court of Tuscaloosa County. (Doc. 1 Ex. A.)

## II. Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). For removal to be proper, the court must have subject matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Upon removal, a defendant bears the burden of establishing subject-matter jurisdiction. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921).

## III. Discussion

To exercise jurisdiction over an action pursuant to § 1332(a), this Court must determine that the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interests and costs. *See, e.g., Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Spurlin does not dispute that the parties are diverse; however, he claims that Cincinnati Insurance has not shown that the amount in controversy has been met.

Spurlin failed to demand a specific amount in his prayer for relief. "Where a plaintiff fails to specify the total amount of damages demanded . . . a defendant seeking removal based on diversity jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement." *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)). "The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010). "Defendants may introduce their own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper." *Id.*

Cincinnati Insurance urges the Court to "examine the pleading[s] in light of its 'judicial experience and common sense' to evaluate the amount in controversy." (Doc. 6 at 4) (quoting *Roe v. Michel N. Amer., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010)). To be sure, the Court is entitled to exercise its own common sense and to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings and record evidence. *Pretka*, 608 F.3d at 754.

However, the Court is still limited in what inferences it may draw from the sparse record before it. Here, there simply is not enough evidence for the Court to conclude that the amount in controversy requirement is met.

Cincinnati Insurance argues that Spurlin's bad faith claim for punitive damages, standing alone, is sufficient to meet the amount in controversy requirement in this case. In support of this assertion, Cincinnati Insurance cites to numerous Alabama cases wherein juries awarded substantial punitive damage awards for bad faith failure to pay on insurance policies. *See, e.g.*, *Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 11 (Ala. 2001) (verdict awarding compensatory damages of $200,000 and punitive damages of $1.2 million for bad faith failure to indemnify and defend against assault and battery claims); *Washington v. Fire Ins. Exchange, Inc.*, CV-2006-003591, 2010 WL 5620426 (Mobile Circuit Court 2010) ($400,000 verdict for bad faith failure to pay out on an insurance policy after a fire destroyed claimant's home and possessions). However, "mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature" of Spurlin's bad faith claim in this case. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir. 2003) (rejecting similar argument as to bad faith failure to pay out on an insurance policy covering acts of employee dishonesty).

The Court is "not free simply to assume" that Spurlin is "likely to be awarded substantial punitive damages" in the present action. *SUA Ins. Co. v Classic Home Builders, LLC*, 751 F. Supp. 2d 1245, 1255 (S.D. Ala. 2010). The Alabama cases to which Cincinnati Insurance cites involve insurance claims arising from dramatic events such as fire damage or allegations of assault and battery. There is little reason to infer that an Alabama jury would award similarly high damages in the present case where the controversy concerns only access to a handful of parking spaces. As a result, whatever punitive damages that Spurlin seeks in this case are too speculative to satisfy the amount in controversy requirement.[3]

Spurlin's claims for compensatory damages are no less speculative than his claims for punitive damages. His complaint refers only to two types of actual damages suffered as a result of Cincinnati Insurance's actions: (1) the cost of defending himself in the underlying action by the Owners Association, and (2) the

---

[3] The Court does not reach Spurlin's contention that his bad faith insurance claims are still un-ripe for the purposes of determining the amount in controversy. However, the Court does note that the cases on which Spurlin relies in support all find that such a claim is unripe *under Florida law. See, e.g.*, *Brown v. Safeco Ins. Co. of Ill.*, No. 6:13-cv-1982-Orl-31GJK, 2014 WL 1478833, at *1 (M.D. Fla. Apr. 14, 2014) (finding that a bad-faith insurance claim had no value in determining the amount in controversy because "it is well-settled Florida law that an insurance bad faith claim does not become ripe until the underlying case is resolved against the insurer"). The Court's research has produced no cases indicating that Alabama law mandates a similar outcome.

potential cost of paying any judgment in favor of the Owners Association. Regarding the former, Cincinnati Insurance has provided no evidence regarding Spurlin's legal bills. As to the latter, the damages sought by the Owners Association are equally unknown in large part because the complaint in the underlying action fails to assert a specific amount in controversy.

Any attempt to estimate what damages the Owners Association could recover from Spurlin would amount to mere speculation at this time. As noted above, the Owners Association does not claim a specific amount in controversy in its action against Spurlin. Instead, it refers only to damages "including the value of the loss of use of the Property over the remaining term of the Lease, and the costs of bringing [the underlying action]." (Doc. 1 Ex. A at 10–11.) The record indicates that the "big cost" of bringing the underlying action is the cost of employing an attorney, but Cincinnati Insurance has produced no evidence relating to the Owners Association's legal fees. (Doc. 7 Ex. B at 87) (Deposition testimony of an Owners Association member stating that the "big cost is . . . having to hire a lawyer to straighten out a matter that should have already been straightened out through the documents"). Although the Owners Association claims damages for the loss of use of the property, Spurlin has presented uncontested evidence through his affidavit under oath

indicating that he has taken "no adverse action to interfere with the use of the covered parking pending the outcome of the pending suit in State Court." (Doc. 7 Ex. A at 3.). The Owners Association's discovery responses further cast doubt on the level of actual damages in the underlying action. (Doc. 6 Ex. 2 at 5) ("While Mr. Spurlin has not blocked the property, nor has he brought a legal proceeding to evict the Plaintiff . . . ."). The record thus suggests that any actual damages claimed by the Owners Association would be limited to the still-undefined costs of prosecuting the underlying action against Spurlin.

Cincinnati Insurance attempts to provide a more concrete estimate of potential damages in the underlying action by pointing to the potential loss of rent for Spurlin's parking spaces. Specifically, it has cited a web page advertisement for a portion of the Alston Building that reads: "Comes With 2 Covered Parking Spaces In Parking Garage. 2 Outside Parking Spaces Rented For $22 A Month Per Parking Space." (Doc. 6 Ex. 3.) Cincinnati Insurance further notes that there are eighteen total parking spaces for the occupied suites of the Alston Building and sixty-six years remaining on the parking lease at issue in the underlying action. Based on these figures, Cincinnati Insurance calculates that lost rent creates a baseline for damages at $313,632—or $313,533 after deducting the remaining rent owed by the Owners

Association to Spurlin—in the underlying litigation.

The weaknesses in Cincinnati Insurance's lost-rent calculations are five-fold. First, the web advertisement to which Cincinnati Insurance cites carries a disclaimer indicating that the 2011 listing is outdated.[4] Second, even though the advertisement lists the parking spaces at $22 per space, that fact does not conclusively prove that the Owners Associations did in fact rent out the spaces at such a rate. Third, the advertisement states that only the two *outside* parking spaces are available to rent at $22 per space, but the underlying action concerns Spurlin's *inside* parking spaces. Fourth, Spurlin has submitted an affidavit under oath declaring that he does not believe that the parking spaces at issue were ever rented or used by business guests of the Alston Building owners. (Doc. 7 Ex. A at 3.) And finally, even if the Court ignored these problems, Cincinnati Insurance has presented no evidence that the Owners Association seeks damages for lost rent in the underlying action.[5] As a result,

---

[4] The disclaimer reads: "This property is not currently for sale or for rent on Zillow. The description below may be from a previous listing." (Doc. 6 Ex. 3.)

[5] For the same reason, the Court declines to speculate that the Owners Association could recover damages for Spurlin's alleged interference with business relations. To be sure, discovery responses from the Owners Association do reference one member's efforts to sell his floors in the Alston Building and how Spurlin's actions have jeopardized those efforts. (Doc. 6 Ex. 2 at 4.) Regardless, the Owners Association has not stated a claim for interference with business relations (doc. 1 ex. A), and Cincinnati Insurance has provided no evidence that such a claim is forthcoming. Indeed, the Owners Association's discovery responses in the underlying action indicate that any

the Court cannot rely upon these speculative lost-rent damages in determining whether the amount in controversy is met.

## IV. Conclusion

For the reasons stated above, Spurlin's motion for remand (doc. 5) is due to be granted. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on February 14, 2020.

L. Scott Coogler
United States District Judge

199455

---

claim for interference with business relations would arise in a separate action altogether. (Doc. 6 Ex. 2 at 5) ("Claims of individual owners may be pursued by separate actions.")